Our next case is 4-210528 Illinois Department of Healthcare and Family Services versus Bradley Hamilton. Could counsel for the appellant please state your name for the record? Tana Appley. Thank you. And counsel for the appellee, could you please state your name for the record? Elliot Turpin. Thank you. Counsel for the appellant, you may proceed. Anna Gottlieb Good afternoon. May it please the court. Anna Gottlieb for appellant, the Illinois Department of Healthcare and Family Services. The circuit court erred when it did not order child support to continue through the date of the youngest child's high school graduation in this case. Parents have a duty to financially support their child in the event of a dissolved marriage. And since 2003, the Illinois legislature has unequivocally required that this support extend through high school graduation in the event the child turns 18 before that time. In this case, the child support terminated in November 2020, even though it is undisputed that the child had just turned 18 but still had several months of high school ahead of him. This court should thus correct this error by either reversing the order denying the department's petition to continue child support through the date of the high school graduation or the alternative to exercise its inherent authority to amend the error in the 2012 child support order to reflect that that support should have continued through the date of high school graduation. What was the order of issue entered? Which order, your honor? The child support order? Yeah, the order which contained the incorrect information. That was entered in August of 2012. So that's like 10 years ago. That's correct, your honor. So this was the last order of child support entered. But the second remedy we're talking about in the alternative, that actually doesn't contain a temporal limitation. And actually, the cases that have found courts to use inherent authority in this type of situation of a clerical error say that this can be done even once the court's original jurisdiction would have expired under the order. Well, an acrotonc order, which would be a clerical error, means the court meant to put down a figure or a date. And for whatever reason, that wasn't, the order doesn't reflect the date the court meant to put down. And that's exactly the situation here, your honor. Didn't the court mean to put down the date it did? If that's mistakenly so? There's no evidence here that the court meant to enter the 18th birthday. And actually, the pre-printed form. You're looking at a panel of prior trial court judges. And when we're talking about there's no evidence as to what the trial court meant to do. Of course, trial courts don't explain. There's no record about what they meant to do. So the question is, what reason is there to believe that the trial court didn't intend to put down this precise date? There are several reasons for that conclusion here. The first one being the 2012 order itself. So the way this trial support order works, as it does in other cases, it's a pre-printed form. And in this section that talks about termination, it says in parentheses, insert the later date of either the 18th birthday or the child's high school graduation. And here, the earlier date was inserted. And we know this because there's a notice of withholding that was filed earlier in the case that is actually the first document that talks about termination. And that particular... That wasn't being clear. So I apologize. Let me be more clear. It seems to me there's a difference, and this is what I want you to address, between on the one hand, the trial court meaning to put down a date of just randomly picking January 2013. And for some reason, the order says October 2012, when the court didn't mean that. And when the court meant to put down January 2013, albeit it was mistaken to choose that second date. In other words, the court made a mistake, but there it is in the order. It's not as if the order reflects something the court didn't intend to do. Do you understand what I'm saying? I understand what you're saying. And I really hear that as referring to a judicial error as opposed to a clerical error. The judicial error requires some sort of reasoning to have used an alternate date. And there was no such reasoning used here. And how do we know that? We know this because we know that the law at this time, and at all relevant times, required that the child's high school graduation be entered. And the notice of withholding, which was filed earlier in this proceeding, did state that date. It showed that the child's department... So if the court makes a mistake picking the wrong date, there's no judicial reasoning? Well, because the court didn't follow the exact requirements of the act, it couldn't have intended to stray from what it was supposed to do. It could have intended to pick that date. Well, Your Honor, there's actually very little case law that suggests that the court can just choose to end termination early. It could be a mistake. It is a mistake. And the other side in the circuit court proceedings stated that this was a mistake because the law required this to happen. Did the court pick the date, or was it handed a form, a pre-printed form, that had already been filled out by somebody else? It's unclear from this record exactly who filled out the date. But the order is a pre-printed form that has a blank spot for a date. And right next to that blank spot it says, insert the later date between the child's 18th birthday or... These are assistant AGs, right? I believe that the department was involved in this case. I'm not sure. It's the department, so... I'm not exactly sure who... Here's the reason I ask. Just from a pragmatic standpoint. From my jurisdiction, when these kinds of cases came in, they were normally in large blocks. And they were all filled out by the assistant AG or whoever it was that was representing the department. And they're just handed up, you know, one after the other, sometimes in large stacks. And basically it's a matter of the court acknowledging that this is the order that the parties want entered, yes. And they sign off on it. Is that essentially what may have happened here? It may have happened. I mean, again, we have the resulting order in the record. We don't know exactly who signed what. But I believe that was the practice. To address basically what each of my colleagues have brought up now. The court entered the order that was intended. It was handed up by the attorney who prepared it. And it was, this is the order they wanted entered. And the court is acknowledging that by entering its signature on the order. Correct? Well, Your Honor, the... I'm sorry. Maybe it wasn't clear. Really, it's kind of like yes or no. So that is what happened. But that doesn't change the fact that this is a clerical error. This is not something that is more than a date that was... Generally, a clerical error requires some other evidence in the record to clearly indicate that it was a clerical error. And it sounds like we're actually arguing, well, it could be a judicial error, it could be a clerical error. So we are not arguing that it's a judicial error. And we believe that the evidence in the record between the notice of withholding and the order itself demonstrates that this is not, this was just the incorrect date that was entered. Okay. So it was a mistake. It was a mistake from our standpoint. So then somebody from the department comes in in 30 days and says, Judge, you know what? We messed up on this order. We need to get a new date. Correct. But there was no... Nobody did that. Correct. What happens then? Well, the no-proton remedy is available. There's no temporal limitation, so it is still available at this time, even though the order itself has expired. The no-proton requires that the judge didn't mean to issue that date when the judge clearly did. It was just the wrong date, but the judge clearly meant it. He's signing the form. No-proton doesn't apply that, does it? Well, we believe it does, because we believe the court could not have intended to go against the wishes of the legislature here. And the legislature... Can I interrupt you for a second just to make an observation? It seems to me that you're arguing the evidence in the record. The evidence in the record is the document. It's what's written on the order. As to what the court was thinking or not thinking, that's all speculation. That's not evidence in the record. It's part of the argument. You can make a valid argument. I don't mean to say you can. It's just that that's not hard evidence for us to consider. Sure, Your Honor. The point I was trying to make is that the circuit court should have been acting within the bounds of the Marriage and Dissolution of Marriage Act here, which does require, it states in Section 505G, that the court is only permitted to enter the latter date between the 18th birthday and the high school graduation. So that wasn't done here. And, again, the inherent authority argument is our argument on the alternative, and I'd like to address the order on appeal here. And that order is a denial of the Department's petition to continue this child support through the high school graduation. Why didn't you file a petition to modify 510? Excuse me? Why didn't you file a petition to modify? So, Your Honor, that's a great question. This is not, I believe you're referring to Section 510, which deals with prospective modifications. We are not seeking, and we didn't seek to modify, because there is no change of circumstances here. Why wouldn't the fact that the child isn't going to graduate at that time be a substantial change in circumstances? Because it's, and this is what's a little bit... It wasn't even known exactly when the kid was going to graduate, right? Well, it was known, because the Notice of Withholding back in, I believe that was maybe in 2009, did estimate this date correctly. So it did originally... It estimated it correctly, meaning later you're able to go back and say that that was a good date. But at the time, it was not known when the child was going to graduate. Would that be a fair statement? I think there was... In the same way, when you have young kids, you know, you kind of know when they're going to enter school, and you know at what point they're going to graduate. So it was known that he was going to graduate around June or May of 2021 at all times, which is, again, another reason why what was entered in the 2012 order was a mistake. I believe Illinois has strict requirements as to when children enter school and if your birthday falls on some side of September 1st. So I believe these calculations can be done even when children are young. Was there a full evidentiary hearing when this order was entered? Which order? The order that you're... The order that we're appealing from? No. So what the department did was we moved to continue the child support order, and it wasn't disputed that the child was graduating at the end of that school year. So there was no evidentiary or no evidence put in on that particular issue because it was admitted by Mr. Hampton. So the department's petition here should have been granted because the act does require in three separate places that child support is to terminate and is to continue through the date of high school graduation. And the petition was filed when? It was filed in January of 2021, so in the time... Ten years later, 11 years later. From the child support order, yes, but it was filed just two months after the child turned 18 and before the act says that child support is supposed to terminate. It was filed months before he actually graduated high school. So then I guess, again, why not a petition to modify from the substantial change being the child hadn't graduated when anticipated, was going to graduate, and that that's different from the circumstance at the time the original order was entered? At the time the petition was made, because the child was still a senior in high school at this time, there really was no change of circumstances. He, at that point, had just been attending school. There was no change in circumstances that the department or his mother could point to because he was always meant to graduate towards the end of that school year ending in 2021. So there actually wasn't a change of circumstances, which is why this case is a little bit of a misfit for that particular remedy. And what the department is trying to do here is to enforce the obligations that are in the act itself. And the legislature in Section 505A, which defines the duty of support that is owed to children, defines a child as someone who's either under the age of 18 or under the age of 19 and still attending high school. Also in Section 505G, the legislature empowered the court to enter a termination date only the latter between the 18th birthday and the high school graduation. So when, and likewise, Section 510D also says that under these circumstances, the latter graduation date is what controls. So taken together, these three portions of the act require that this child support be extended through that date. So it wasn't so much that there was a change. But it wasn't extended. It wasn't extended. I think you acknowledge this is a couple months after the termination, which the action was brought. Correct. It was a renewal. It was a renewal. It's really akin to an enforcement action. In Section 505I, the circuit court retains enforcement powers for child support, you know, back pay and arrearages. And they use the language, other enforcement mechanisms. And we believe this falls under that provision. We believe that because the act requires this type of, this specific temporal duration of child support, this is really just an enforcement of the provisions of Section 505. And, again, below, Mr. Hampton conceded that this was an error given the state of the law. The state of the law has been the same since 2003, which governed this entire dissolution proceeding. Why didn't the attorneys who were responsible for it discover the error sooner and ask to modify it 10 years ago? Your Honor, I don't have a good answer from that based on the record. If we were to agree with you now, wouldn't that be providing some, I'm not sure what the right word is, support for sloppy practice? Your Honor, I'd like to just point out that this is, we're talking about child support for the best interest of the child. This is a very unique circumstance. This isn't going to repeat in other types. How is that responsive to my question about whether we tolerate it 10 years later or providing support for sloppy practice when this is something which, as you point out, obviously, including being caught by the person who supplied the document to the court in the first place, along the lines of Justice D'Agran part of what I'm sure has happened. Sign here, Judge. This is the correct order. Well, again, I do think that regardless of what happened in 2012, this is something that was brought to the attention of the circuit court in the time before the child, before, I guess, the temporal end of child support that's contemplated by the Act. So even if we're talking about a delay in bringing that petition for relief, it was brought before that time, and there's nothing in the Act to say that this needed to be done within a certain amount of time. And again, the circuit court does retain these enforcement authority throughout the duration of the child. The court's willing to enforce the order as you submitted it. Correct, Your Honor. So there's nothing for them to enforce. I can see a basis to modify it, saying, Judge, because the substantial change in circumstances is we have discovered that 10 years ago, the wrong date was entered, does not comply with the statute. The substantial change is that that order shouldn't be as it is written, and it should have been modified to reflect the date that we now have. Why wouldn't any trial court see that as a modifiable circumstance and issue your remedy? So again, the way modification petitions have worked are it's a change in the factual circumstances, and I believe from the standpoint of the custodial parent at the time, there was no change in circumstances. There was an error in the order. There sure is. They're not going to be getting the child support that they would have been getting otherwise had it been tenured properly, had the order been tenured properly. That's a substantial change. I believe the concern was that if a petition for modification had been brought, the parent who's responsible for child support could say nothing has changed because the child is gradually... Well, they always do. That's why you have two lawyers, and they fight it out in the trial court because one of them says there's a change in circumstances. The other one says, no, there isn't, Judge. And then they duke it out, and the judge decides, okay, somebody wins, somebody loses. It's different. The difference is in the Illinois Supreme Court case in remarriage of Peterson, the Supreme Court has defined a modification as an alteration to the obligations. This is. It alters the obligation. But we believe that the obligation here at all times was to pay support through the high school graduation, and that didn't... See, here's what concerns me. It sounds to me like somebody's made a decision based on theory rather than the practicalities of the situation in front of them, and for whatever reason has chosen to pursue this petition as opposed to a motion for modification, and then for whatever reason has decided that, no, we're not even going to consider modification. And I'm really confused by that because that sounds more like a bureaucratic decision than a practical one. I do think that the concern with saying that modification is the proper remedy here is that there was no change in factual circumstances between the parent and the child. See, if I were hired by the other side, I'd come up with an argument as to why the facts are different now. So even if this could have been, I guess, if a 510 petition could have been appropriate here, I don't believe that changes our main argument, which is that Section 505 requires this and also allows the court to make this decision under Section 505. And because Section 505 has its very specific temporal requirements and it also contemplates multiple child support orders, so we believe taken together those provisions would allow this to be continued or extended  Counselor, your time is up, and I apologize for taking so much of it. You will have an opportunity on your vote. Thank you. Counsel for the appellate. Good afternoon, Your Honors. As we can see, the more the state gets into this case, the more they rely almost exclusively on this theory of a clerical error that can be cleared up at any time. And I guess if I had been the state and I had sat on this order for almost 10 years, I'd probably be making that argument too. But I think that we can dispose of that argument rather easily if we haven't already. First of all, it's forfeited because never at any point at the trial level did the state ever mention a clerical error, did it ever ask for a non-protonic order, did it even ask for a modification. It asked for an extension or a continuation. So that argument simply is forfeited. This is something that the state has come up with at the appellate level and as the appellant should not be allowed to do. But in any event, even if it weren't forfeited, as Your Honors have indicated, a clerical error is one that is not the result of a judicial function. And the cases have held that the establishment of child support is in fact a judicial function. And a non-protonic order is used for the situation where you've got a written order that does not comply with whatever the trial court actually ordered. But as a couple of Your Honors have indicated, there has to be evidence in the record to, as the cases say, clearly show that the order in question does not comply with whatever it was that the trial court intended or ordered. And the state has not cited anything in this record that shows that the trial court intended for that graduation date to be the termination date as opposed to the date that the child turned 18. Just as an aside, this order from August 2012, that was a modification order. And even though 505 sets the original termination date where it does, Section 510 is a little bit more liberal as far as allowing different dates such as when the child was emancipated and whatnot. So I think that's a difference that is at least significant here. But in any event, there is no evidence in the record to show that these, and I'll say two orders, because as we all know, there was one for March of 2012. That was the original one that set the termination date as the child's 18th birthday. And then there was the one from August of 2012 that did the same thing. It seems pretty clear that on two different occasions, five months apart, the trial court intended to set the order the way it did. The state is basically saying, well, the trial court couldn't have intended to use this earlier date because that would be wrong. Well, if that were the case, then this court probably would be out of a job because anybody can say, well, this order is wrong and the court couldn't have intended it because that would be outside the law. Well, everybody in this room is human. Everybody, every circuit judge and attorney is human. People make mistakes, and I don't know why. I can't tell you why the trial court put that date the way it did. I was in this case initially, but during these times, when the child support was being dealt with, I was out of the picture. And my client was just dealing pro se, as was his ex-wife, through the attorney general's office, through the Department of Health Care and Family Services. But to just say that this couldn't have been intended because that would be wrong, that, as we say where I grew up, that dog doesn't hunt. It doesn't work that way. Again, trial courts make mistakes. And in this case, one thing that probably needs to be pointed out is that if you look at that March 2012 order, that was the first one that said the termination date is the 18th birthday. If you look at the last page of that order, it says that the order was entered upon evidence. It also says by agreement. Again, this was a modification. 510D says that a different termination date can be provided where it's in writing and it's by agreement. Does that mean that that order was completely valid under 510D? Well, I'll leave it for your honors to decide, but it is significant that those boxes were checked. And then this August 2012 order essentially just picked up on that. There has to be a reason why it was done that way. I don't know what it is, but one thing is for sure. We don't have any transcripts of any hearings to compare to what the court did in this case. So I think, again, the record has to clearly show a different result was intended. The state is the appellant. They have the burden to present this court with a record to support that argument, and they haven't done it. And parenthetically, I'd like to point out something on page 13 of the state's brief. The reply brief, I'm sorry. That is just clearly wrong. The state says that two of the pages of the August 2012 order are carbon copies of two pages of the March 2012 order. I've got both of those orders here. There is not a single page in either order that is identical to any page in the other order. So I don't know where the state is getting that from. But, again, probably not a big issue. But the argument was made, and I think it's refuted by the record quite clearly. The main reason, Your Honors, that the state's motion was properly denied was that they were, in fact, legally seeking a modification of the August 2012 order. Even if they don't want to admit it, that's what this was, and they didn't follow the right procedures. First of all, the August 2012 order was a valid order as of January of 2021 because no one had ever challenged it. The parties, as we all know, have two years under Section 214.01 to challenge an allegedly erroneous order. If they don't, it stands. That was never done here, pursuant to Mitchell, pursuant to Ayala, the cases I've cited in my brief. As of the date the state filed the petition, this was a valid order. It was not an order that was entered without jurisdiction so as to make it void. If there was an error, it was simply voidable, and that has to be taken care of within two years. So this was an attempt at a modification. A modification is, as the Illinois Supreme Court has stated, when you take action to change the party's obligations after the original decree was entered. Well, this August 2012 order had terminated two months before the state even filed their petition. So at the time that the state filed their petition, Mr. Hampton's obligation was zero. And they were trying to make it go from zero to something,  which by definition, according to the Illinois Supreme Court, is a modification. So as your Honor said, in the Waller case, a modification is a modification. And there is no exception in 510A for extending the period of time that the parties have to pay child support. The state, if they want to renew this obligation, if you will, if they want to fire it out, they have to file a motion to modify it. But the problem is, not only do you have to file a petition alleging a change in circumstances, which the state did not do, you have to file it before the obligation terminates. I've cited numerous cases in my brief to that effect. In the Fick case, this court held that child support can be reviewed and modified any time before the obligation is terminated. Here, the obligation had terminated two months before the state even filed their petition. Several of the cases that I've cited in my brief have to do with modification of maintenance, but modification of maintenance and child support are both under Section 510A. And the cases that talk about maintenance clearly indicate that in order to modify, extend, whatever, maintenance, that has to be done prior to the expiration or termination of the obligation. The same thing would apply to child support. And the reason is, as the Rice case says, is that in 510A, the statute talks about modification of installments that accrue after notice of the filing of the motion for modification. Well, if that order, that child support obligation, has already terminated, there are no installments accruing. It's just done. So that is why the rule is that in order to modify maintenance or child support, you have to file that motion for modification prior to the expiration of the obligation. Bottom line, Your Honors, as the court has kind of alluded to, the state just blew it by waiting until the order had expired and not following the proper procedures. So, that leaves us with, well, what could the state have done? Well, as I've already said, it should have come in within two years and changed, asked this order to be changed, if it really didn't comply with either the law or what the court intended. Again, that never happened. There is the possibility of a petition for educational expenses under Section 513. Counsel, why are you going into this? Is any of this before us? Well... What the state could have done? Well, in the child support order, it did mention Section 513. Our first point was going to be, kind of what you just said, Justice Steinman, whether or not the state could have utilized this really isn't essential to this appeal. The main issue is whether the state followed the right procedures, and we don't have to find that they could have gone under 513 in order to find that they messed up by doing what they did. So, our position, as stated in my brief, is that they could have done this, but again, they didn't. Whether or not that was available to them, I think is kind of academic. I think there are a multitude of reasons to affirm the trial court, and that is what I'm asking the court to do. Thank you, counsel. Ms. Gottlieb, did you have a problem? Just a few points, Your Honor. First, Mr. Hampton's attorney brought up Waller. And I think, what I'd like to, even though we maintain that Waller is no longer a good law because it interpreted the amendments, I'm sorry, it interpreted the act before the 2003 amendments. What's interesting about Waller is, in Waller, this court has said that you need to go down the modification route. There, it was a similar factual case where the parent was trying to extend child support through graduation, but at that time, there was no statute that required this. And the court found that this had to be a modification, and it states that there's no statute that requires this. So this is why this is a modification. Now, here we are almost 20 years later, and there is a statute that requires this. So this is why we maintain that a modification is not the right route, and that rather we can just seek relief under Section 505 in the way that we have done. Second, Mr. Hampton's lawyer also said that there's no evidence that this was done, that this date may have been entered on purpose in the 2012 order. I'd just like to, again, note that Section 510D states that it may be agreed to that you can terminate early, but there's only several cases that talk about this being done, and it's always done in extraordinary circumstances. Some of the cases we cite in our briefs talk about children joining the military or marrying at an early age. We don't have anything like that here, and although the 2012 order was entered on a modification order, it's clear from the modification petition in the record that it was just done to decrease the amount of monthly payments, not to change the duration. So really, there is ample evidence in this record that this was a mistake. So for those reasons, because this was a mistake, and there is enough evidence in the record to speak to the fact that it's a clerical mistake rather than a judicial error which requires reasoning, we ask this Court to exercise its inherent authority codified under Supreme Court Rule 366A.1 or in the alternative to reverse the denial of the petition to an extent. Thank you. Thank you, Counsel. I'm going to take this matter under advisement. The Court stands in recess.